# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Gary Feinerman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 5513 | **DATE** | 9/28/2012 |
| **CASE TITLE** | Gray vs. Ghosh, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, Defendants' motions to dismiss [29], [32] at 3-16, and [39] are denied. Defendants shall answer the complaint by 10/26/2012. Status hearing scheduled for 11/21/2012 at 9:45 a.m.

■ [ For further details see text below.]  Docketing to mail notices.

## STATEMENT

  Plaintiff Doiakah Gray, an inmate at the Stateville Correctional Center, filed this civil rights suit pursuant to 42 U.S.C. § 1983 concerning his inability to see a cardiologist for an examination with a cardiograph heart monitor. The defendants are Stateville Warden Marcus Hardy, Assistant Warden D. Edwards, Grievance Officer Colleen Franklin, Wexford Health Sources Chief Executive Officer Kevin Halloran, and former and current Stateville Medical Directors Dr. Partha Ghosh, Dr. Shute, Dr. Bautista, and Dr. Carter. All Defendants (except Dr. Ghosh, who has not yet been served) have moved to dismiss the complaint under Rule 12(b)(6). Doc. 29; Doc. 32 at 3-16; Doc. 39. The motions are denied.

  The complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true at this juncture. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). In evaluating a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court also must consider additional facts set forth in Gray's opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid*. The following sets forth the facts as favorably to Gray as permitted by the complaint and other materials that may be considered on a Rule 12(b)(6) motion. It goes without saying that the court does not endorse the following facts and that the evidence may contradict Gray's allegations.

| | Courtroom Deputy Initials: | JD |
|---|---|---|

## STATEMENT

**A.     Dr. Shute, Dr. Bautista, and Dr. Carter**

Drs. Shute, Bautista, and Carter argue that the complaint alleges no personal involvement by them and that the grievances attached to the complaint demonstrate that he did not exhaust administrative remedies. Dr. Bautista argues that the complaint's only mention of his involvement is an allegation that Gray sent him one letter. Drs. Shute and Carter contend that the complaint does not allege that they personally participated in Gray's medical care.

To state such a claim, a plaintiff must demonstrate both (1) an objectively serious medical condition; and (2) that the defendant acted with deliberate indifference to the condition. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Defendants do not dispute that Gray's complaint satisfies the first requirement. To satisfy the second requirement, a plaintiff must allege facts sufficient to show that he defendant was actually aware of the plaintiff's serious medical need but disregarded it. *See ibid.*; *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). The doctors do not contend that Gray has failed to allege a serious medical condition. Instead, they challenge only the subjective prong, arguing that the complaint does not sufficiently allege that they were aware of and acted with deliberate indifference to Gray's medical needs.

The doctors correctly note that to be held liable under § 1983, they must have been personally involved in some way with the lack of treatment Gray alleges. Vicarious liability, where a supervisor may be held liable for the torts of a subordinate, does not exist in § 1983 actions, and individual liability requires personal involvement in the alleged constitutional deprivation. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010). The allegations need not assert direct participation, but they must at least indicate that the defendant "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

The complaint focuses on Gray's grievances and letters to Stateville and Wexford officials. It clearly alleges that Dr. Ghosh had recommended in September 2010 that Gray undergo a cardiac exam by a cardiologist and that no one followed through with the recommendation. Gray further alleges that he wrote directly to Dr. Bautista at least once in August 2011 (Doc. 6 at ¶ 12 and Exh. H); that he wrote to the prison's medical director (without specifying which one) in June 2011 (*id.* at ¶ 9); and that all three doctors acted with deliberate indifference by not adequately treating his condition and by not sending him for cardiac exam with a cardiologist (*id.* at ¶¶ 20, 21). The complaint read as a whole "put[s] [the doctors] on notice of the claim's nature," and its "lack of detail does not permit dismissal." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). The allegations allow a plausible inference that these doctors were allegedly aware of Gray's need for a cardiac exam yet ignored that need.

The doctors also seek dismissal on exhaustion grounds, arguing that they were not specifically named in Gray's grievances. Failure to exhaust may be decided on a motion to dismiss only when it "is so plain from the face of the complaint" that such a defense applies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir.2002). Attached to the complaint are grievances from January and August 2011, both of which stated that Dr. Ghosh's recommendation that Gray undergo a cardiac exam with an outside cardiologist never occurred, but neither of which mentions a doctor other than Ghosh. Doc. 6 at Exhs. J & K. It is unclear if these two grievances are the only ones Gray submitted.

**STATEMENT**

Furthermore, the response to one of the grievances refers to Dr. Shute's resubmitting Dr. Ghosh's consultation request after alternative treatment Doc. 43, Exh. A. Such a response suggests that the grievance may have been for the medical department in general. The purpose of a grievance is to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Turley v. Catchings*, 8941, 2004 WL 2092008 at *3 (N.D. Ill. Sept. 15, 2004) (declining to find a claim unexhausted based solely on the absence of the name of the defendant in the grievance); *Murray v. Artz*, 2002 WL 31906464 at *4 (N.D. Ill. Dec. 31, 2002) (same). It is thus not clear from the face of the complaint and the exhibits attached thereto that Gray failed to exhaust administrative remedies for Drs. Bautista, Shute, and Carter.

    **B.    Kevin Halloran**

Kevin Halloran is the Chief Executive Officer of Wexford Health Sources, a corporation that contracted with the State of Illinois to provide medical services to Illinois prisoners. Halloran contends that allegations that Gray twice wrote him letters insufficiently plead that he was responsible for Gray not receiving an examination by a cardiologist. The complaint actually alleges three occasions (November 2010, February 2011, and August 2011) when Gray wrote Halloran seeking a cardiac exam. Doc. 6 at ¶¶ 5, 8, 15.

Although the Seventh Circuit has noted that not every person who receives letters regarding an alleged constitutional violation is liable under § 1983, s*ee Burks*, 555 F.3d at 595, Halloran was not simply an unrelated public official like the Governor, the Director of Prisons, or even the prison warden referred to in *Burks*. As the CEO of Wexford, there is at least an inference that Halloran could have intervened and investigated. A supervisory official may be liable for the constitutional torts of their subordinates if the supervisor knows of and facilitates, approves, condones, or turns a blind eye to the conduct. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000); *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). Gray's allegations that he sent letters on three occasions informing Halloran of Stateville physicians' continued refusal to send him for a cardiac exam prescribed months earlier contains all of the elements of a deliberate indifference claim: (1) an objectively serious medical condition, which Halloran does not contest at this time, and (2) actual knowledge of the condition and a conscious disregard of it. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994). Halloran has been denied dismissal in other comparable cases. *See Thomas v. Ghosh*, 2009 WL 910183, at *5 (N.D. Ill. Mar. 31, 2009); *Young v. Wexford Health Services*, 2012 WL 621358, at *7 (N.D. Ill. Feb. 14, 2012); *Reliford v. Ghosh*, 2011 WL 3704747, at *4 (N.D. Ill. Aug. 19, 2011). The same result is warranted here. Although Halloran cites a case where his motion to dismiss was granted, *Taylor v. Wexford Health Services, Inc.*, 2012 WL 245165 at *5 (N.D.Ill. Jan. 26, 2012), the allegations in that case challenged a Wexford policy as opposed to any individual action or inaction. Gray's complaint alleges that Halloran ignored Gray's complaints that Stateville doctors repeatedly refused a cardiac exam. As noted above, Gray's assertions state a claim of deliberate indifference against Halloran.

    **C.    Warden Hardy, Assistant Warden Edwards, and Grievance Officer Franklin**

Warden Hardy, Assistant Warden Edwards, and Grievance Officer Franklin contend that they were not personally involved with Gray's medical treatment and that his alleged letters and grievances to them cannot provide the predicate for deliberate indifference. As non-medical persons, these defendants argue that because the medical staff were being contacted about Gray's medical needs, they cannot be held liable.

**STATEMENT**

The complaint alleges that Gray wrote to Hardy and Edwards sometime in November 2010, February 2011, and August 2011 about Dr. Ghosh's recommendation for Gray to see a cardiologist. Doc. 6 at ¶¶ 5, 8, 11. In addition to his letters, Gray submitted an emergency grievance to Hardy in August 2011. *Id.* at ¶ 14. Gray also alleges that he submitted a grievance to Franklin in early 2011 and that he wrote her letters throughout 2011, requesting that she respond to his grievance about his need for an exam by a cardiologist. *Id.* at ¶¶ 6, 10, 12.

Gray's allegations provide all the elements of a deliberate indifference claim, as he asserts that he had a serious medical condition and that Hardy, Edwards, and Franklin were made aware of the condition but disregarded it. *See Arnett,* 658 F.3d at 750-51. Although a warden "is entitled to relegate to the prison's medical staff the provision of good medical care" and cannot be held liable simply for his participation in the grievance process, and although "[a] layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference," *Burks*, 555 F.3d at 595-96; *see also Greeno*, 414 F.3d at 656-57, Gray's allegations do not simply involve a grievance officer's processing of a grievance or a warden affirming the denial of a grievance. *See Burks*, 555 F.3d at 595-96; *Greeno*, 414 F.3d 656-57. According to Gray, when the medical department delayed or refused to follow through with Dr. Ghosh's recommendation, Gray repeatedly communicated the medical department's inaction to Hardy, Edwards, and Franklin. "[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition." *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *see also Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir.1999) (warden required to act after being informed by letters from an inmate that officials allegedly denied him life-sustaining medication and food). This, at least on the pleadings, is one of those situations.

For the foregoing reasons stated above, the motions to dismiss are denied. Defendants shall answer the complaint by October 26, 2012.